# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## Wilmington Division
Civil Action No. 7:02-CV-166-F(1)

UNITED STATES OF AMERICA )
*ex rel.* )
Kendall Suh, M.D. and Brunswick )
Emergency Physicians, P.A., )
　)
　　Plaintiffs, )
　)
vs. )
　)
HCA-The Healthcare Co., f/k/a )
Columbia/HCA Healthcare )
Corp. d/b/a Brunswick Community )
Hospital and Paul Schulte )
　)
　　Defendants. )
_____)

FILED
10-15-02

**FILED UNDER SEAL**
**PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**FALSE CLAIMS ACT COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

1/24/07

## INTRODUCTION

1. Kendall H. Suh, M.D. (hereinafter "Dr. Suh") and Brunswick Emergency Physicians, P.A. (hereinafter "BEP") (collectively "Relators") bring this action on behalf of the United States of America against Defendants for treble damages and civil penalties arising from the Defendants' false statements and false claims in violation of the Civil False Claims Act, 31 U.S.C. § 3729 *et seq.* The violations involve false statements and false claims regarding hospital emergency room services allegedly provided by Defendant HCA-The Healthcare Co., f/k/a Columbia/HCA Healthcare Corp. d/b/a Brunswick Community Hospital (hereinafter "Defendant Hospital" or "HCA") and its agents.

2. As required by the False Claims Act, 31 U.S.C. § 3730(b)(2), Dr. Suh has provided the Attorney General of the United States and the United States Attorney for the Eastern District

of North Carolina with a statement of all material evidence and information related to the complaint. This disclosure statement is supported by material evidence establishing the existence of Defendants' false claims, which is known to Dr. Suh at the filing. The statement includes attorney-client communications and work product of Dr. Suh's attorneys, and is submitted to the Attorney General and to the United States Attorney in their capacity as potential co-counsel in the litigation. Therefore, the Relators understand this disclosure to be confidential.

## JURISDICTION AND VENUE

3. This action arises under the False Claims Act, 31 U.S.C. §§ 3729 et seq. This Court has jurisdiction over this case pursuant to 31 U.S.C. §§ 3732(a) and 3730(b). This court also has jurisdiction pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 1331.

4. Pursuant to 31 U.S.C. § 3732(a), venue is proper in this District, because the proscribed acts complained of took place in this district. Venue is also proper pursuant to 28 U.S.C. § 1391(b) and (c), because at all material and relevant times, Defendant transacted business in this District by submitting claims for reimbursement.

## PARTIES

5. Dr. Suh is a citizen of the United States and resident of North Carolina. From approximately 1988 to the present, he was employed by BEP, a North Carolina professional association that contracted with Defendant Hospital for emergency physician services. Relators bring this action based on direct, independent, and personal knowledge and also on information and belief.

6. Relators are original sources of this information to the United States, direct and independent knowledge of the information on which the allegations are based and voluntarily

provided the information to the Government before filing this action. This action is based on the information provided.

7. The United States of America (hereinafter "United States"), through its agency, the Department of Health and Human Services (hereinafter "HHS") and, specifically the Health Care Financing Administration (hereinafter "HCFA"), now known as the Center for Medicare and Medicaid Services (hereinafter "CMS"), administers the Medicare program to provide health insurance for the elderly and the disabled.

8. Defendant Hospital (HCA) is a Delaware corporation that currently owns and operates approximately 200 hospitals and other health care facilities in over twenty (20) states. The corporation was formed in or about February 1994. In approximately May 2000, it changed its name to HCA-The Healthcare Corporation. HCA operates and at all relevant times herein, operated Brunswick Community Hospital, located in Supply, North Carolina.

9. Upon information and belief, Defendant Paul Schulte is a citizen and resident of the state of North Carolina and at all relevant times herein served as Chief Operating Officer and/or Chief Executive Officer of Defendant Hospital.

## FACTUAL BACKGROUND

### A. Federally funded Health Insurance Programs

10. In 1965, Congress established the Medicare Program to provide health insurance for the elderly and disabled. Medicare Program payments come from the Medicare Trust fund, which is funded by working Americans through payroll deductions and by government contributions.

11. Private insurance companies contract with the Government to manage much of the daily administration and operation of the Medicare Program. These private insurance companies,

or "Medicare Carriers," are charged with and responsible for accepting Medicare claims, determining coverage, and making payments from the Medicare Trust Fund. These carriers, operate pursuant to 42 U.S.C.A. § 1395(h) and 1395(u) and rely on the good faith and truthful representations of health care providers when processing claims.

12. Over the past thirty-six years, the Medicare Program has enabled the elderly and disabled to obtain necessary medical services from medical providers throughout the United States.

13. Two factors critical to Medicare's success are: (1) that medical providers only bill the Medicare Trust Fund for medical treatments or services that are legitimate and/or medically necessary and (2) that medical providers not take advantage of their elderly and disabled patients.

14. The Medicaid Program provides care for indigent people. Although administered by individual states, the Medicaid Program is funded primarily by the federal government.

15. TRICARE, formerly the Civilian Health and Medical Program of the Uniformed Services (hereinafter "CHAMPUS"), provides benefits for health care services furnished by civilian providers, physicians, and suppliers to retired members of the Uniformed Services and to spouses and children of active duty, retired, and deceased members. The program is administered by the Department of Defense and funded by the federal government.

### B. Defendants' Schemes To Defraud

16. Dr. Suh is a licensed, board certified emergency medicine physician and board certified family practitioner physician. He was employed by BEP, a North Carolina professional association that contracted to provide emergency physician services for Defendant Hospital from approximately 1988 to the present.

17. While Dr. Suh was employed by BEP and during the contract with Defendant Hospital, Dr. Suh raised questions about the billing practices and procedures in the emergency department, including bills to the federally funded health care programs.

18. Specifically, during the course of his work with Defendant Hospital, Dr. Suh learned that Defendants were fraudulently representing and billing for Physician Assistant (hereinafter "PA") emergency department services by billing for these services under the physician's name at one hundred percent (100%) of the Medicare fee schedule. Dr. Suh also learned that Defendants were submitting claims to Medicare and Medicaid for emergency room services coded at a higher complexity level that the services that were in fact provided.

19. Beginning in or about 2000, Dr. Suh repeatedly informed Defendant Schulte — and through Schulte, informed Defendant Hospital — about these fraudulent activities. Defendant Hospital ignored this express notice of fraud and permitted the continued fraud upon the government.

20. On January 1, 1997, the federally funded health insurance programs began reimbursing for PA emergency department services at a rate of seventy-five percent (75%) of the Medicare fee schedule.

21. In January 1998, pursuant to the Balanced Budget Act of 1997, the federally funded health insurance programs increased the rate of reimbursement for PA emergency department services to eighty-five percent (85%) of the Medicare fee schedule.

22. Pursuant to these established rules and procedures, when a PA performed services by him or herself for a Medicare beneficiary in the emergency department, the service was reimbursable only at eighty-five percent (85%) of the fee schedule.

23. Only where a physician personally reviewed the history, examined the patient, and made the medical decisions regarding a patient's treatment could the hospital properly bill and receive payment at one hundred percent (100%) of the fee schedule.

24. Since Defendant Hospital began employing PAs in approximately 1999, it has engaged in a pattern and practice of submission of claims for one hundred percent (100%) of the fee schedule when PAs provided services to a Medicare beneficiary in the hospital without physician involvement as described above.

25. When the physician personally reviewed the history, examined the patient, and made the medical decisions regarding the patient's treatment, Dr. Suh and at least one other physician would as a matter of practice expressly note this review in the patient's chart.

26. Defendants' practice and procedure of billing for emergency department services ignored the important distinction that the billing record was generated solely from a coding sheet rather from the medical chart. This coding sheet provided no distinction from services performed solely by PAs as compared to services performed by the physician.

27. In relying solely on the coding sheets and ignoring whether a physician had performed the requisite level of service required for one hundred percent (100%) reimbursement, Defendant Hospital engaged in a pattern and practice of fraud, consistently billing for and receiving reimbursement for PA services at the higher one hundred percent (100%) rate, rather than the applicable eighty-five percent (85%) rate mandated by the Medicare fee schedule.

28. Defendant Hospital also submitted claims for physician emergency department services utilizing the fee schedule required by the HCFA, now known as CMS, a component of the HHS. This system involves coding procedures relating to physician visits and consultations known as Evaluation and Management (hereinafter "E&M") Codes.

6
Case 7:02-cv-00166-F   Document 1   Filed 10/15/02   Page 6 of 10

29. The Current Procedural Terminology (hereinafter "CPT") Codes for emergency department services include 99281, 99282, 99283, 99284 and 99285. These codes must reflect the difference in intensity of services as specifically described in each particular code.

30. Accurate coding for emergency department services is a key element affecting Medicare's total outlay for these services.

31. During Dr. Suh's tenure at Defendant Hospital, he repeatedly informed Defendant Schulte — and through Schulte, informed Defendant Hospital — of the lack of training provided to physicians and the other healthcare providers charged with coding decisions. In this regard, Dr. Suh expressed serious reservations about the accuracy of the hospital's E&M Coding and the resulting Medicare reimbursement.

32. In instances where the healthcare provider did not provide an E&M Code for the service provided, a hospital employee would randomly select the level of service and resulting E&M Code. The selection was made without the benefit of the medical chart containing the documentation of the service provided. Dr. Suh repeatedly expressed concern about E&M Coding decisions made in this fashion.

33. Defendant Schulte ignored Dr. Suh's repeated requests for proper training and verification of the E&M Coding decisions. At one time, Defendant Schulte told Dr. Suh that his concerns about E&M Coding were unwarranted and that an independent audit had confirmed that the emergency department E&M Coding had a ninety-eight percent (98%) accuracy rate.

34. By misrepresenting the physician's role in services provided in the emergency department in connection with PA services and by misrepresenting the level of services in E&M billings, Defendant submitted false and fraudulent claims for payment to the federally funded health insurance programs.

## Count I

*False Billings for Services Not Rendered*

35. Relators reallege and incorporate paragraphs one through thirty-four as if fully set forth herein.

36. Defendants, knowingly or in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, presented or caused to be presented, and are still presenting or causing to be presented, false or fraudulent claims for payment by the federally funded health insurance programs, in violation of, *inter alia*, 31 U.S.C. § 3729(a)(1).

37. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, made, used, caused to be made, or caused to be used, false or fraudulent records and statements to get false or fraudulent claims paid or approved, in violation of, *inter alia*, 31 U.S.C. § 3729(a)(2).

38. Defendants conspired to defraud the government by submitting and receiving payment for false or fraudulent claims, in violation of, *inter alia*, 31 U.S.C. § 3729(a)(3).

39. Unaware of the falsity of Defendants' claims and/or statements, and in reliance on the accuracy thereof, the United States paid and continues to pay for services provided to individuals insured by the federally funded health insurance programs.

40. As a result of the Defendants fraudulent actions, the United States has been, and will continue to be, severely damaged.

## DEMAND FOR JURY TRIAL

Relators, on behalf of themselves and the United States, demand a jury trial on all claims alleged herein.

8
Case 7:02-cv-00166-F   Document 1   Filed 10/15/02   Page 8 of 10

## PRAYER FOR RELIEF

WHEREFORE, Relators respectfully pray this Court:

1. Award the United States damages in the amount of three times the actual damages it sustained because of the false claims and fraud alleged within this Complaint, as provided by the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*;

2. Impose civil penalties of $11,000 for each and every false claim that Defendants presented to the United States and/or its agencies;

3. Award Relators pre- and post-judgment interest, reasonable attorneys' fees, costs, and expenses for these costs necessarily incurred in bringing and pressing this case;

4. Grant permanent injunctive relief to prevent any recurrence of the False Claims Act for which redress is sought in this Complaint;

5. Award Relators the maximum amount allowable under the False Claims Act; and

6. Grant Plaintiffs such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 14th day of October 2002.

John S. Simmons

James M. Griffin
Simmons & Griffin L.L.C.
1711 Pickens Street
Post Office Box 5
Columbia, SC 29202
(803) 779-4600

Eben T. Rawls, III
N.C. State Bar No. 8478
Rawls, Dickinson, & Scheer, P.A.
227 West Trade Street, Suite 2140
Charlotte NC 28202
(704) 376-3200

CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing or attached document on the United States by depositing a copy in the United States Mail, properly wrapped with postage attached, addressed to:

Hon. John Ashcroft
United States of America
United States Department of Justice
10th & Constitution Avenues
Washington, D.C. 20036

The Honorable Frank Whitney
United States Attorney
310 New Bern Avenue
Federal Building, Suite 800
Raleigh, North Carolina 27601-1461

This the ___14___ day of October 2002.

*Jennifer D Gamble*